UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIRK ALFORD, SR. and KIRK PATRICK ALFORD, II,

    Plaintiff(s),

v.

LT. MICHAEL POUSAK, DET. JAMES VERNIER, SGT. TROY TAYLOR, SGT. FRANK SLONE, OFFICER JOSEPH MEIER, WALTER DUNCAN, ERIK DOLAN, JASON GINOPOLIS, RYAN BOLTON, and Officer John Doe, in their individual and official capacities,

    Defendant(s).
_____/

Case No. 2:07-cv-15517

HONORABLE STEPHEN J. MURPHY, III

**ORDER DENYING DEFENDANTS' MOTION TO STRIKE (D/E 40),
DENYING PLAINTIFFS' MOTION TO STRIKE (D/E 43) AND
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (D/E 28)**

This is a civil rights claim by two men against certain officers of the police force of Oak Park, Michigan, arising out of a search and seizure that occurred at a residence in Oak Park, Michigan on March 14, 2007. The plaintiffs, homeowner Kirk Alford, Sr. ("Alford Sr.") and his son, Kirk Patrick Alford, II ("Alford II") claim that certain officers entered Alford Sr.'s home when he was away, questioned Alford II at gunpoint and forced him to lay on the ground outside and searched the residence, allegedly taking a ring and some money. Defendants have filed the instant motion to dismiss, arguing that plaintiffs' claim as to the search and seizure of Alford II should be dismissed on the basis of qualified immunity, and that, as to the allegation of theft, the plaintiffs have failed to come forward with sufficient evidence upon which a reasonable jury could conclude that any particular officer or officers took Alford Sr.'s property.

## PROCEDURAL POSTURE

Neither side adhered to our practice guidelines in their initial briefs, in that neither had cited to the record in support of their statement of facts. As a result, it was extremely difficult to determine if the parties were misrepresenting the record or citing to facts not in evidence. The Court issued an order requiring the parties to annotate the facts sections of their respective briefs with citations to the record, and to note where no factual support exists. The defendants complied and submitted an annotated facts section with citations to the record supporting all facts alleged. The plaintiffs annotated their facts section sporadically and did not supply factual support for many of their allegations, including the allegation that Alford II was handcuffed.[1]

The plaintiffs also submitted supplemental affidavits by Kirk Alford, Sr. and Kirk Alford II, and a criminal record printout from a witness. Defendants have moved to strike the affidavits of Alford and Alford II on the grounds that plaintiffs (1) did not file them with their response, (2) did not supply them to the defendants when they requested them back in January, and (3) as to Alford Sr.'s affidavit, the part where he refers to a witness's criminal history is not made on personal knowledge. The plaintiffs have responded that the federal rules permit the opposing party to file affidavits at any time prior to the hearing. See Fed. R. Civ. P. 56 ("An opposing party may serve opposing affidavits before the hearing day"). Plaintiffs have not responded to defendants' claim that they requested the affidavits but plaintiffs did not supply them. Substantively, most of the evidence was already before the Court in other documents, such as the plaintiffs' depositions. As for the evidence that the witness has a criminal history, that evidence is both irrelevant and hearsay, and so would not be considered anyway. Defendant's motion to strike is therefore denied as moot.

---

[1] Plaintiffs' attorney conceded at oral argument that her client was not handcuffed.

Plaintiffs have also filed a motion to strike the defendants' affidavits, which motion is without merit. In plaintiffs' motion to strike, plaintiffs state that the various defendants have no recollection of the events of the day. Because of this, plaintiffs argue that the affidavits are made not on personal knowledge. This is incorrect, because the defendants have personal knowledge of their lack of recollection and how it reflects on what they might have done. Further, the defendants filed their affidavits more than two months ago, and plaintiffs' motion to strike was filed the day before the hearing, and is therefore untimely. Plainitffs' motion to strike is denied.

## FACTS

In considering a motion for summary judgment, the Court views the following facts in the record in the light most favorable to the plaintiff.

Kirk Alford Sr. is a resident of Oak Park, Michigan, and the owner of the house where the incident at issue took place. Alford Sr. was not at home during the events in question.

On March 14, 2007, Alford Sr.'s son, Kirk Patrick Alford, II, arrived at his father's house, opened the door with a set of keys and turned off the alarm. He went into the house, went to the front door to get his mail, and went into the basement to get something to drink. (Affidavit of Kirk Alford, II, ("Alford II Aff.") at ¶ 2.

The Oak Park police department received a 911 telephone call from Blake Avery, a neighbor of Alford Sr. Avery stated that he had observed a burnt orange Cadillac pull into the driveway at the rear of 12941 Northfield, Alford Sr.'s home and saw a black male enter the rear of the house.[2]

---

[2] Plaintiffs have offered evidence that Avery had a police record, which evidence is the subject of defendants' motion to strike. There is no evidence that the police officers at the scene, or indeed any Oak Park officers, were aware of this at the time of the incident in question. Because the relevant question regarding the conduct of the officers is whether their actions were objectively reasonable in light of the information known to them at the

3

The Oak Park police issued a general dispatch of a felony in progress, a home invasion at the Alford Sr. home at 12941 Northfield. Joseph Meier Affidavit ("Meier Aff.") at ¶ 2. Officer Joseph Meier was one of the first officers at the scene. *Id.* ¶ 2. Meier went to the back of the house and saw an entry door to the residence that was open but the screen door was closed. *Id.* ¶ 4. There is no evidence at this point in time that Meier knew anything other than there was a possible felony home invasion going on, but there was no physical evidence of a forceful entry. There was an alarm system keypad near the back door, which plaintiffs state was visible to Officer Meier once he was inside the house.

While he was in the basement, Alford II saw footsteps going around the basement window "like people were running by the window in our backyard." Alford II Aff. ¶ 3. He ran up the stairs to the kitchen and opened the main back door and saw Officer Meier inside the house holding a gun. *Id.* Meier put his gun to Alford II's head, grabbed him by the collar and left shoulder and pulled him out of the house. *Id.* ¶ 4. Meier told Alford II to get on the ground and, as Alford II was trying to comply, Meier shoved Alford II to the ground. *Id.* ¶ 5.[3]

While Alford was on the ground, other unidentified officers entered the house. Alford II aff. ¶ 6. Meier asked Alford II what he was doing in the house, and Alford II replied that he lived there. *Id.* Meier told Alford II that he had received a call that someone had broken into the house. *Id.* ¶ 7. Meier asked Alford II for identification. *Id.* Alford II gave Meier his drivers license, and told Meier that he had keys and that there was an alarm on the house and you couldn't get into the house without the alarm and keys. *Id.* Alford II states that

---

time they are alleged to have violated the plaintiffs' rights, the Court will disregard this evidence as irrelevant.

[3]Defendants dispute that Meier grabbed Alford and forced him on the ground; however, for purposes of the present motion the Court accepts the version set forth by plaintiffs.

4

Meier then saw that Alford II had keys and saw the alarm on the door. *Id.* The drivers license produced by Alford II had a Detroit home address. Meier aff. ¶ 8.

Alford II told Meier to call Alford Sr. and he gave his father's phone number to Meier and another officer that he later learned was Detective Vernier. Alford II Aff., ¶ 8. Alford II was ordered to remain on the ground and was patted down for weapons. *Id.* ¶ 9. He overheard them talking to his father and then calling in his (Alford II's) identification. *Id.*

The officers told Alford II that they had run his identification and talked to his father. *Id.* ¶ 10. They let him up from the ground but told him that he could not go into the house but had to wait until all of the officers came out of the house. *Id.* Alford II testified that he saw as many as six or seven officers going in or out of the house. *Id.* ¶ 11.[4]

Alford II later went up to an officer, later identified as Officer Anderson, to get the badge numbers of all the officers at the house. *Id.* ¶ 15. Officer Anderson replied that there were too many officers to give out badge numbers, and gave Alford II a piece of paper with a police report number on it. *Id.* ¶ 15. An unidentified officer told Alford II that Alford II was lucky that he didn't have any drugs on him "because he was going to take me to jail." *Id.* ¶ 16. After the police left, Alford II went back into the house, set the burglary alarm and left, being too upset to stay in his father's house. *Id.* ¶ 17.

Oak Park police officers fill out a "use of force card" when they use force in the line of duty. According to the use of force cards offered in evidence, defendants Meier, Vernier and Dolan all drew their guns at some point during the incident.

The dispatch occurred at 1:38 p.m. and the officers cleared the scene at 1:55 p.m.

---

[4] Alford II states in his affidavit that he "later learned" that among these officers were Joseph Meier, Bernard Anderson, Erik Dolan and Steve Arbenowske. Alford II aff. ¶ 11. Alford II does not state the basis for such knowledge, and therefore that statement appears to be inadmissible.

5

Plaintiffs have submitted the affidavit of Alford, Sr.  Alford Sr. attests that he had been with a friend, Mrs. Todd, when he received a call from the Oak Park police asking if Kirk Alford II was his son and whether he had a right to be in Alford Sr.'s house. (Alford Sr. Aff., ¶ 6.  Alford Sr. said yes and asked what was the problem, to which the officer said "nothing."  *Id.* ¶ 6-7.  Alford II called a few minutes later, said the police were at the house and that they thought someone had broken into the house, and Alford Sr. told his son to get the badge number of the officers.  *Id.* ¶ 8.  Alford Sr. heard nothing else from his son, and didn't return home until 8:30.  *Id.* ¶10.

When Alford Sr. returned home, he saw that his closet doors, cabinets and drawers were thrown open and had been searched.  *Id.*  The doors to the hallway closets were open and had been searched, and it appeared that someone had been in his bedroom and office and had gone through the drawers and papers.  *Id.*  Alford Sr. called Alford II and asked him what had happened, and was told that the police had been in the house.  *Id.* ¶ 11.  Alford Sr. also found that cash, a gold chain and a gold ring was missing from the bedroom.  *Id.* ¶ 13.

Plaintiffs have filed this lawsuit against Meier and against Detective James Vernier, Walter Duncan, Erik Dolan, Jason Ginopolis, Ryan Bolton and "Officer John Doe." Defendants Lt. Michael Pousak, Sgt. Troy Taylor and Sgt. Frank Slone were dismissed by stipulated order.

Defendants have submitted the affidavits of all the remaining defendants in support of their motion for summary judgment.  Meier testifies that he did not participate in any search of the premises.  Defendants' Motion for Summary Judgment, Ex. 2.  Vernier testified that he never entered the premises.  Defendants' Motion for Summary Judgment,

6

Ex. 4.  Dolan has no recollection of the incident nor of entering the house.  Defendants' Motion for Summary Judgment, Ex. 5.  Bolton has no recollection of being at the location.  Defendants' Motion for Summary Judgment, Ex. 6.  Duncan recalls seeing the vehicle in the driveway but cannot recall anything else about the incident.  Defendants' Motion for Summary Judgment, Ex. 8.  Ginopolis recalls responding to the scene, but nothing else.  Defendants' Motion for Summary Judgment, Ex. 7.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

## ANALYSIS

I.   Is Summary Judgment Appropriate Regarding Alford II's
     <u>Claims of</u> <u>Excessive Force and Unreasonable Search?</u>

Defendants argue that the doctrine of qualified immunity applies to immunize the conduct of defendants Vernier, Meier and Dolan as to the search and seizure of Alford II Defendants concede that Meier approached the location with his gun drawn. (Meier aff., Meier dep. pp. 18-28).  He approached the back entrance of the home and saw that the main door to the home was open but the screen door was closed.  He went into the house and encountered Alford II.  Meier ordered Alford II out of the house at gunpoint and forced him to lie on the ground.  Alford II told Officer Meier that the house was his father's house, that he had keys and permission to be there.  Detective Vernier called the father and verified that Alford II was permitted to be at the house.  At that point Alford II was permitted to get up but not enter the house until the police left.  Alford II was not struck and his search consisted of a pat down of his person.  There is no evidence in the record that either Vernier or Dolan had any direct contact with Alford II, and they deny such contact in their uncontroverted affidavits.  Defendants argue that these facts do not constitute excessive force as a matter of law and, even if they did, summary judgment is appropriate on the grounds of qualified immunity.

The plaintiffs argue that the entry of the officers was without probable cause because the informant was not reliable and his report was based solely on Alford II's race.  Plaintiffs argue that the entry, search and seizure were unreasonable because there were no signs of forced entry; the entry, search and seizure were unreasonable because the Alford Sr. residence had an alarm system and it was never activated; and the seizure of Alford II and the search of the premises was in violation of Oak Park police procedure as testified to by Det. Vernier, who testified that the protocol was to determine if there was any forced entry,

9

if someone was found inside there would be some interview to see if that person had permission, and "if you find an open door and the home does not appear to be ransacked, and someone's just walking through the home, that person may be a homeowner, may be legitimate and I don't think we treat those situations the same."  Vernier Dep. 18-19.

The test for qualified immunity is (1) was there a violation of a constitutional right, and (2) was the right clearly established.  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).  Generally, a court must address these points in order.  *Saucier v. Katz*, 533 U.S. 194, 201(2001); *but see Pearson v. Callahan*, ___U.S. ___, 129 S. Ct. 808, 818 (2009) (*Saucier* two-step process not mandatory in all cases).  The Court will therefore first address whether Officer Meiers' actions violated Alford II's constitutional rights.

Alford II claims that Officer Meier used excessive force against him in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution.  In order to establish a claim of excessive force, Alford II must prove the defendants either (1) actively participated in the use of excessive force; (2) supervised the officer that used excessive force; or (3) failed to intervene to prevent the use of excessive force.  *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  The inquiry in unlawful force cases "is an objective one based upon the 'information possessed' by the police officer involved."  *Boyd v. Baeppler*, 215 F.3d 594, 600 (6th Cir. 1997) *(citing Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  The question is "what a reasonable police officer would believe to be lawful based upon the information then possessed, not what the officer subjectively believed."  *Boyd*, 215 F.3d at 600.

> "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This determination should also be made "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Id.* at 397. It is not for the court to substitute its own personal notion of the appropriate procedure for those decisions made by

10

police officers in the face of rapidly changing circumstances. *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir.1992). As the *Smith* court noted, "[w]hat constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Id.* The Court's mandate in *Graham* was clear: "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." 490 U.S. at 396-97. Ultimately, the Fourth Amendment "reasonableness" test requires a "careful balancing" of the individual interest in being free from unreasonable seizures and the important governmental interest in protecting the safety of its peace officers and the public. *See id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). The reasonableness of a particular use of force "requires careful attention to the facts and circumstances of each particular case, including:" (1) "the severity of the crime at issue," (2) the immediacy of the threat posed by the suspect to the officers or others, and (3) whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Id.*

*Williams v. City of Grosse Pointe Park,* 496 F.3d 482, 486 (6th Cir. 2007).

In applying this test, the Sixth Circuit has given a great deal of deference to the conduct of the officers in cases involving claimed excessive force in the context of an investigatory stop. In *Humphrey v. Mabry*, 482 F.3d 840 (6th Cir. 2007), the Court upheld a *Terry* stop of a vehicle believed to have been driven by a dangerous suspect. The plaintiff in *Humphrey* was required to exit his vehicle at gunpoint, patted down, and handcuffed and restrained for a few minutes. The Court held that the conduct was reasonable and did not constitute excessive force and that defendants were entitled to qualified immunity. In *Houston v. Clark County Sheriff Deputy*, 174 F.3d 809 (6th Cir.1999), the court considered a Section 1983 suit against police officers that stopped a car at gunpoint in the mistaken belief that the occupants of the car had been identified by other officers as being involved in a shooting of a security guard. The police handcuffed the occupants of the car and placed them in a police car for about an hour while the officers investigated the crime. *Id.* at 812. Upon further investigation, it turned out that the security guard had not been shot and the car carrying the plaintiffs was not the car identified as

11

having been involved, and the occupants of the car were released without charges. *Id.* The Sixth Circuit found for the defendants, holding that the police officers possessed a reasonable, if mistaken, suspicion that a crime had been committed and that the occupants of the car had been involved in that crime. *Houston*, 174 F.3d at 813-15. The Court further found as a matter of law that police's drawing of their weapons, their use of handcuffs and the hour long detention of the plaintiffs in the patrol car did not constitute an unreasonable search and seizure. *Houston*, 174 F.3d at 814-15.

Applying the test for excessive force as set forth in *Williams*, *Humphry* and *Mabry*, the Court holds that the police officer defendants did not use constitutionally impermissible force in seizing Alford II. The crime at issue, a possible home invasion, was a serious one that had the potential for danger to the officer and to others. While there is no evidence that Alford II was in any way uncooperative, and it is possible that the officer's safety could have been ensured with less intrusive conduct, the Court cannot find that the defendants' conduct was an objectively unreasonable use of force under the circumstances.

The Court also finds that, in the alternative, Officer Meier's conduct is protected by qualified immunity. In determining whether a reasonable officer would have known that his conduct was unlawful, the Court must look to precedents of the United States Supreme Court, then to the case law of the Sixth Circuit and finally to decisions from other circuits. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004). If it is not clearly established at the time of the officer's conduct that the conduct violates a plaintiff's constitutional rights, an official "'could not...fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.'" *Champion*, 380 F.3d at 901 *(quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established for purposes of qualified immunity "when the contours of the right are sufficiently clear, even if the specific

12

action in question has never been held unlawful." *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006). The inquiry is "whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. at 202). The burden at all times is on the plaintiffs to demonstrate that the officers are not entitled to qualified immunity. *Smoak*, 460 F.3d at 778. The plaintiffs have not directed the Court to any case that clearly shows that Officer Meier's conduct clearly violated Alford II's constitutional rights and therefore have failed to carry their burden of demonstrating that Officer Meier is not entitled to qualified immunity.

Plaintiffs rely on *Solomon v. Auburn Hills Police Dept.*, 389 F.3d. 167 (6th Cir. 2004), in support of their argument that Officer Meier's conduct was objectively unreasonable and should not be immunized by qualified immunity. In *Solomon*, the court denied qualified immunity to officers that confronted and arrested a woman attending a movie with her children. The court noted that the crime was minor, the woman posed absolutely no threat to the officers or others, she made no verbal threats to the officers, she was surrounded by children, she was significantly smaller than the officers, she made no attempt to flee, and she was compliant with the officers' commands. Plaintiffs assert that, under *Solomon*, because Alford II was not resisting arrest or acting unlawfully, Meier's conduct in shoving Alford II, handcuffing him and throwing him to the ground was unreasonable.[5]

*Solomon* does not support denying qualified immunity to Officer Meier here. The plaintiff in *Solomon* was a 5'5", 120 pound woman who was accused of trespassing when

---

[5] In their response brief at page 19, plaintiffs appear to accuse Dolan and Tetler as well as Meier of coming into the house, grabbing Alford II, yelling at him, forcefully grabbing him by the collar and left shoulder, throwing him to the ground and again brutally forcing him to the ground with his hands behind his back, handcuffed, and interrogating him. Plaintiffs do not identify any part of the record that supports this characterization of the facts, and neither Alford II's deposition nor his affidavit supports this characterization, so the Court will disregard the allegations in this section of the brief.

she and her six children went from one movie to another within a movie theater after theater employees told her that her eighteen year old son could not supervise his teenaged siblings in attending an R-rated movie. *Solomon*, 389 F.3d at 170-74.  When two police officers, one of which weighed over 230 pounds, tried to arrest her for trespassing, she backed away from the officers, who then told her that she was under arrest for assaulting an officer.  *Id.* at 171.  She went into the lobby with the officers, at which time the one of the officers came up behind her, grabbed her arm and attempted to leg sweep her.  *Id.*  Solomon tripped but did not fall, and crossed her arms, yelling "Why are you doing this[?] I did not do anything," after which the two officers grabbed her arms, threw her against a wall and knocked her face into a display case.  *Id.*  One of the officers, Officer Miller, forcibly handcuffed her, breaking her elbow in the process.  The Sixth Circuit affirmed the trial court's denial of qualified immunity to Officer Miller.  Applying the two part test of *Saucier v. Katz*, the court first found that the amount of force used by officer was objectively unreasonable in light of the minor nature of the crime at issue, the fact that the suspect was small, unarmed and surrounded by her minor children and the fact that Solomon did not attempt to flee. *Solomon*, 389 F.3d at 174.  The court further found that qualified immunity was inappropriate because no reasonable officer could find that the extreme use of force there was warranted by the circumstances.  *Id.* at 175.

      The facts are much different in the present case.  Officer Meier was responding to a reported possible home invasion.  He saw Alford II's car, whose description matched that of the report, and upon entering the home he saw Alford II, whose description also matched that of the report.  The fact that the report itself might not have been based on probable cause, while relevant to the question of whether Alford II's constitutional rights were in fact violated, is not relevant to Meiers' liability, because his potential liability for purposes of

14

qualified immunity rests on the facts as known to the officer himself. Where a police officer's claim to qualified immunity "rests on his asserted good faith reliance on the report of other officers, we consider: (1) what information was clear or should have been clear to the individual officer at the time of the incident; and (2) what information that officer was reasonably entitled to rely on in deciding how to act, based on an objective reading of the information." *Humphrey*, 482 F.3d at 848. The plaintiffs have the burden of showing that qualified immunity does not apply, and the plaintiffs have failed to carry that burden here.

In conclusion, the Court finds that summary judgment is appropriate on the unlawful force claim. The defendants were responding to a possible felony home invasion. The plaintiffs' arguments that the presence of the alarm and the criminal record of the witness who called in the report make the search and seizure unreasonable are without merit. The police department is not the defendant here, and the individual officers acted reasonably under the circumstances. There was no Fourth Amendment violation because Meier had reasonably believed that Alford II could be a burglar, and his pushing of Alford II to the ground and requiring that he remain there while his identity was confirmed was appropriate given the circumstances. Even if there were a Fourth Amendment violation, Officer Meier's conduct did not violate clearly established precedent, and therefore the plaintiffs cannot carry their burden of showing that qualified immunity does not apply. For these reasons, the Court will grant summary judgment to all defendants on Alford II's claims of unlawful force.

II.  Is Summary Judgment Appropriate on Alford II's Claims of
Illegal Search of his Person and Alford Sr.'s Claims of Illegal
<u>Search of his Residence and Alleged Illegal Seizure of his Property?</u>

Defendants also seek summary judgment on Alford II's and Alford Sr.'s claims of unreasonable search. Defendants argue that (1) the search of Alford II's person by Meier, Vernier and Dolan was reasonable in light of the belief of the defendants that the plaintiff might be committing a home invasion; (2) the search of the premises by Bolton, Ginopolis and Duncan was reasonable because there could have been other suspects on the premises; and (3) any theft of property would not be reasonable, but the plaintiffs have not offered any evidence that it was done by any particular officer, and therefore cannot meet their burden of proving that a particular officer took anything.

It is a "'basic principle of Forth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (*quoting Payton v. New York*, 445 U.S. 573, 586 (1980)). A warrant is required to search a person's home "unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978)).

One exception to the warrant requirement is exigent circumstances. *Hardesty v. Hamburg Township*, 461 F.3d 646, 652 (6th Cir. 2006). Exigent circumstances may arise from (1) hot pursuit of fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent the potential escape of a suspect; and (4) situations posing risk of danger to police or others. *United States v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006). Exigent circumstances excuse the warrant requirement "where law enforcement faces a 'need to

16

protect or preserve life or avoid serious injury.'" *Hardesty*, 461 F.3d at 652 (quoting *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978)).

Defendants argue that the entry into the Alford home and the search of the home and the person of Alford II was justified by exigent circumstances. Exigent circumstances "exist when there are 'real immediate and serious consequences' that would certainly occur were a police officer to 'postpone[ ] action to get a warrant.'" *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (*quoting O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir. 2002) (other citation omitted). Exigent circumstances have been held to exist where there is a probability or substantial chance of criminal activity, even when it turns out that there is no actual criminal activity. *See, e.g., United States v. Johnson*, 9 F.3d 506, 509 (6th Cir. 1993) (broken window and report of possible burglary in progress constituted probable cause and exigent circumstances justifying warrantless entry even where no burglary was found to have occurred). Nor do the police have to exhaust all conceivable alternatives before a warrantless entry is permissible. See *United States v. Rohrig*, 98 F.3d 1506 (6th Cir. 1996) (warrantless entry where loud music was disturbing the peace created exigent circumstances and therefore did not violate the Fourth Amendment).

In *Rohrig*, the Sixth Circuit stated that in order to show that exigent circumstances excused the warrant requirement, the government must demonstrate a need for immediate action that would be defeated if the government had taken the time to secure a warrant; identify the governmental interest being served by the officers's entry into the defendants home and ask whether that interest is sufficiently important to justify a warrantless entry, and weigh the government's interest against the privacy interest of the individual in his home. *Rohrig*, 98 F.3d at 1518. The court in *Rohrig* specifically rejected the argument that a warrantless entry is permissible only when all conceivable alternatives have been

17

exhausted, holding that officers merely need to act reasonably, not flawlessly. *Rohrig*, 98 F.3d at 1524.

Applying this test to the facts of this case, the Court is persuaded that the initial entry into the Alford home and the search of Alford II's person were justified by exigent circumstances. The defendants were responding to a 911 report of a possible home invasion. The person calling in the tip stated that he was a neighbor of Alford Sr. and gave his name and his address, and the basis for his belief that the Alford home was being invaded, which gave the officers probable cause to enter the home. The fact that the neighbor was incorrect, that the Alford home was not being invaded, that Alford II was legitimately there, and that the neighbor thought that the residents of the house were white, does not make the officers' conduct in entering the home unreasonable.

The Court also finds that summary judgment is appropriate on Alford II's claim of unreasonable search. The search of Alford II's person was a simple pat-down for weapons, which was justified by the information available to Officer Meier at the time that Alford II was a suspect in a potential home invasion, and Officer Meier was entitled to pat down Alford II's clothing to ensure his personal safety. *See Arizona v. Johnson*, ___ U.S. ___, 129 S. Ct. 781, 786 (2009) (brief pat-down of outer clothing of suspect permitted when officer has reasonable suspicion of criminal activity) (citing *Terry v. Ohio*, 392 U.S. 1, 88 (1968)).

As for the search of Alford Sr.'s home, while there is a question of fact as to the scope of the search, that dispute does not preclude summary judgment here. Taking the facts in the record in the light most favorable to the Alfords, it appears that the search of the Alford residence exceeded the scope of a reasonable investigation. While a brief search of the premises might be justified by the reported home invasion, the scope of the search found

by the Allfords, including a search of drawers, closets and personal papers, appears to exceed the scope of what is justified by the exigent circumstances. The Alfords also allege that a ring and some cash were found to be missing from the house; taking property from the house would unquestionably constitute an illegal search. It appears therefore that there is a question of fact as to whether the search violated Alford Sr.'s rights under the Fourth and Fourteenth Amendments. Nonetheless, summary judgment is appropriate on this claim, also, because the plaintiffs have failed to produce any evidence tying any particular defendant to the allegedly excessive search. Section 1983 does not permit vicarious liability; rather [e]very government official ... is liable only for his own conduct. *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1155 (10th Cir. 2006). The plaintiffs have not produced any evidence that the conduct of any particular defendant violated Alford Sr.'s rights to be free of unreasonable searches. Absent such evidence, summary judgment is appropriate on Alford Sr.'s claims based upon the claimed unreasonable search.

## CONCLUSION

Summary judgment is appropriate on all claims for the reasons stated above.

It is therefore **ORDERED** that Defendants' Motion to Strike (docket 40) is **Denied** as moot; Plaintiffs' Motion to Strike (docket entry 43) is **DENIED**; and Defendants' Motion for Summary Judgment (docket entry 28) is **GRANTED**. A separate judgment will enter.

                                         s/Stephen J. Murphy, III
                                         STEPHEN J. MURPHY, III
                                         United States District Judge

Dated: April 29, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 29, 2009, by electronic and/or ordinary mail.

                                        Alissa Greer
                                        Case Manager